UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

INDIRA YERRAMSETTY,           )
                              )
        Plaintiff             )
v.                            )     No. 2:18-cv-00454-DBH
                              )
DUNKIN' DONUTS NORTHEAST, INC.,)
                              )
        Defendant             )

## MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS DESIGNATIONS

Defendant Dunkin' Donuts Northeast Distribution Center, Inc., moves pursuant to Federal Rule of Civil Procedure 37(c)(1) to strike plaintiff Indira Yerramsetty's expert designations of economist Andrew L. Gluck, real estate broker Carol Soroko, and treating physicians Carlos Mora, M.D., Kishan Patel, M.D., and Marivi DeJesus, M.D., on the bases that the designations are deficient pursuant to Federal Rule of Civil Procedure 26(a)(2) and that the deficiencies are neither substantially justified nor harmless. *See* Defendant's Motion to Strike Plaintiff's Experts ("Motion") (ECF No. 60) at 4-10; Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Strike Plaintiff's Experts ("Reply") (ECF No. 65) at 1-2.

For the reasons explained herein, I grant the Motion in part, to the extent that I preclude any expert testimony on (i) the value of the three parcels of real estate that the plaintiff owned and lost to foreclosure, (ii) the plaintiff's other financial losses, and (iii) costs of the plaintiff's future medical care, and otherwise deny it without prejudice as to the treating physicians' testimony on causation, prognosis, and disability, provided that the plaintiff supplements those designations within 14 days.

1

## I. Applicable Legal Standard

Federal Rule of Civil Procedure 26 provides, in relevant part, that "a party must disclose to the other parties the identity of any [expert] witness it may use at trial to present evidence[.]" Fed. R. Civ. P. 26(a)(2)(A). If the witness must provide a written report, unless otherwise stipulated or ordered by the court, the disclosure must be accompanied by a written report, signed by the expert, containing six categories of information. *See* Fed. R. Civ. P. 26(a)(2)(B). The six categories of information required to be disclosed include: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). If the witness need not provide a written report, unless otherwise stipulated or ordered by the court, the disclosure must state "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

In this case, the court's scheduling order, as amended, required the plaintiff to designate all experts required to be disclosed pursuant to Rule 26(a)(2)(A), including treating physicians, and, with respect to each of them, provide a complete statement of all opinions to be expressed and the basis and reasons therefor, by July 1, 2019. *See* Scheduling Order with incorporated Rule

26(f) Order ("Scheduling Order") (ECF No. 36) at 2 (setting the original deadline as April 17, 2019); Order (ECF No. 46) (amending the deadline to July 1, 2019).

"If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden is on the party that has failed to comply with discovery deadlines to establish that his failure is harmless or substantially justified." *U.S. Bank Nat'l Ass'n v. James,* Civil No. 09-84-P-JHR, 2010 WL 1416126, at *6 (D. Me. Apr. 5, 2010).

"The baseline rule is that the required sanction in the ordinary case is mandatory preclusion." *Harriman v. Hancock Cty.*, 627 F.3d 22, 29 (1st Cir. 2010) (citations and internal punctuation omitted). However, the court retains discretion to impose other sanctions in lieu of, or in addition to, mandatory preclusion. *See* Fed. R. Civ. P. 37(c)(1); *see also, e.g., Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77-78 (1st Cir. 2009) ("Preclusion . . . is not a strictly mechanical exercise. And, in its discretion, the district court may choose a less severe sanction. Where a district court does opt in favor of preclusion, we review that decision with reference to a host of factors, including: (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects – e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket." (citations and some internal quotation marks omitted)).

## II. Factual Background

The plaintiff filed the instant suit in the United States District Court for the District of New Jersey on August 2, 2017, seeking recovery for injuries arising from a 2010 highway accident on

3

interstate I-95 near Saco, Maine. Verified Complaint with Jury Demand ("Complaint") (ECF No. 1) ¶¶ 7-12, 14-16.[1] The case was transferred to this District on October 31, 2018. Opinion and Order (ECF No. 16) at 5-8.

On January 29, 2019, following Judge Hornby's denial of a motion by the plaintiff to transfer venue, *see* Decision and Order on Plaintiff's Motion to Change Venue and Motion to Dismiss (ECF No. 35), I entered a scheduling order directing that the plaintiff designate her expert witnesses by April 17, 2019, the defendant designate its expert witnesses by May 22, 2019, and discovery be completed by June 19, 2019. Scheduling Order at 2. While the parties jointly objected to the scheduling order, they did not specifically challenge their expert designation deadlines. *See* Joint Objection to Scheduling Order with Proposed Rule 26(f) Order (ECF No. 37) at 1. Nonetheless, on March 11, 2019, I stayed all deadlines pending the defendant's filing of a dispositive motion by April 12, 2019. *See* Order (ECF No. 40). However, the defendant did not file its dispositive motion, and, on April 22, 2019, I lifted the stay and reset all pretrial deadlines, with initial disclosures to be served by May 15, 2019, the plaintiff's and defendant's expert designations due on July 1, 2019, and August 5, 2019, respectively, and discovery to be completed by September 3, 2019. *See* Order (ECF No. 46). In addition, I ordered that the parties serve their initial written discovery requests on each other by May 15, 2019. *See id*.

On July 1, 2019, the plaintiff made the following five expert designations:

1) Dr. Carlos Mora - a psychiatrist, who treated the plaintiff while she was an in-patient at Essex County Hospital for 19 months. It is believed that Dr. Mora will testify that plaintiff suffered from post-traumatic stress disorder [("PTSD")] related to the subject accident; and that plaintiff was mentally incapacitated for at least 19 months. The basis of Dr. Mora's testimony will be his treatment of the plaintiff, his medical chart, his examination of the plaintiff,

---

[1] The plaintiff also named Kris-Way Truck Leasing, Inc. ("Kris-Way"), Dennis Lillard, Does I-X, and ABC Corporations I-X as defendants. *See* Complaint at 1. Kris-Way and Mr. Lillard since have been dismissed, *see* Order (ECF No. 35) (dismissing Kris-Way Truck Leasing, Inc.); Plaintiff's Notice of Dismissal of Dennis L. Lillard (ECF No. 31), and the plaintiff has identified neither a "Doe" nor an "ABC Corporations" defendant.

his education and experience. It is expected that Dr. Mora will also opine as to causation, prognosis and disability and the expected cost of her future medical care[.]

2) Dr. Kishan Patel - Complete Neurologic Care - 615 Main Ave - Suite l Passaic, New Jersey 07055. Dr. Patel is expected to testify that plaintiff suffered spinal disc herniations, radiculopathy to the left leg, TMJ, headaches and the expected cost of her future medical care. Dr. Patel is a treating physician who is expected to testify regarding her treatment of the plaintiff from her chart examinations of the plaintiff, her medical education and experience. Dr. Patel is expected to testify as to causation, prognosis and disability.

3) Dr. Marivi De[J]esus - United Medical/Barnabas Health Medical Group - Lyndhurst New Jersey. It is expected that Dr. Dejesus will testify as to plaintiff's pain management related to the accident and the expected costs of her future medical care. Dr. Dejesus is a treating physician and is expected to testify consistent with her chart, her examinations of the plaintiff, her medical education and experience. Dr. Dejesus is also expected to testify as to causation, prognosis and disability.

4) Plaintiff expects to retain either a real property appraiser or real estate broker to opine as to the value of the three parcels of real estate she owned and lost to foreclosure because of her inability to work and their present day value. The identity, credentials and a written report from this individual will be provided soon after he/she is retained.

5) Plaintiff expects to retain an economist to quantify all her financial losses including but not limited to lost wages, lost savings, value of lost investments, financial losses associated with her inability to work and medical expenses incurred and anticipated. The identity, credentials and a written report from this individual will be provided soon after he/she is retained.

Plaintiff's Expert Disclosures ("Expert Disclosures"), Exh. 1 (ECF No. 53-1) to Request for Hearing Re: Discovery Dispute Pursuant to Local Rule 26(b) ("Hearing Request") (ECF No. 53). The plaintiff added that she "reserve[d] the right to call any other experts as a continuing course of discovery may reveal[.]" *Id*. at [2].

By email dated July 11, 2019, the defendant's attorney informed the plaintiff's attorney that none of the designations comported with Rule 26(a)(2) or the court's scheduling order. Emails

between Attorney Germani and Attorney Skoblar dated July 11, 2019, to July 12, 2019, Exh. 2A (ECF No. 53-2) to Hearing Request, at 3-4.

On July 12, 2019, the plaintiff's counsel supplemented the plaintiff's expert disclosures, identifying Fred Sokolich, a licensed New Jersey real estate broker, and Andrew Gluck, an economist. *Id*. at 1-2. He indicated that Mr. Sokolich "of Sokolich Realty located in Fort Lee New Jersey" was expected to "give an opinion as to the current market value of the . . . properties which Indira owned at the time of the accident and which were subsequently lost to foreclosure because of her inability to earn a living[.]" *Id.* at 1. He also stated that he would provide the defendant's counsel "with a copy of Mr. Sokolich's resume upon my receipt of the same" and had asked him "to advise me if he has ever been retained as an expert witness as a realtor." *Id.*

The plaintiff's counsel indicated that Mr. Gluck was expected to "quantify plaintiff's economic losses including the amount of her lost wages; diminishment in earning capacity; the value of her 401(k) which Indira used to survive; the value of her lost savings; and the nature and extent of her financial losses associated with the three foreclosures alluded to above." *Id.* at 2. A copy of Mr. Gluck's CV was purportedly provided as an attachment to the email. *See id.* In response, the defendant's counsel renewed her objection to the disclosures. *See id.* at 1.

By email dated July 15, 2019, the plaintiff's counsel notified the defendant's counsel that Mr. Sokolich had advised him "that since the properties are located in Passaic County [the plaintiff's counsel] would be better off hiring a broker in that county." Email from Attorney Skoblar to Attorney Germani dated July 15, 2019, Exh. 2B (ECF No. 53-3) to Hearing Request, at 1. He added, "I hope to give you the names and credentials of another broker sometime this week." *Id*. The "name[] and credentials of another broker" – Carol Soroko – along with her property valuations, were not disclosed for another two months, in the form of a September 17, 2019,

attachment to the plaintiff's brief filed in opposition to the instant motion. *See* Plaintiff's Brief in Opposition to Defendant's Motion to Strike Plaintiff's Experts ("Opposition") (ECF No. 62) at 4-5; Exh. U (ECF No. 63-20) to [Additional Attachments filed by Indira Yerramsetty] ("Additional Attachments") (ECF No. 63).

The plaintiff also supplied, in the form of additional attachments to her opposing brief, medical records, including from Dr. Mora, Dr. Patel, and Dr. DeJesus, *see* Exhs. N (ECF No. 63-13), R (ECF No. 63-17), & T (ECF No. 63-19) to Additional Attachments; a narrative report of Dr. Patel dated September 13, 2019, as well as narrative reports of two other medical providers who are not designated as experts, *see* Exhs. E (ECF No. 63-4), I (ECF No. 63-8), & S (ECF No. 63-18) to Additional Attachments; a letter from her former attorney discussing the possibility of settlement, *see* Exh. J (ECF No. 63-9) to Additional Attachments; her initial disclosure dated May 14, 2019, in which she identified, *inter alia*, Dr. DeJesus under the subheading "Pain Management" and Dr. Patel under the subheading "Neurology" and provided contact information for each, *see* Exh. P (ECF No. 63-15) to Additional Attachments; her expert disclosures dated July 1, 2019, *see* Exh. Q (ECF No. 63-16) to Additional Attachments; and Mr. Gluck's *curriculum vitae*, dated September 16, 2019, and list of court appearances, dated July 15, 2019, *see* Exh. V (ECF No. 63-21) to Additional Attachments.[2]

### III. Discussion

The defendant seeks to strike the plaintiff's five experts on the basis that none of her expert designations, as provided on July 1, 2019, satisfied Rule 26(a)(2)'s requirements and that she has not demonstrated that the deficiencies are either substantially justified or harmless. *See* Motion at 3-11. The defendant further argues that the plaintiff's supplementations following the filing of

---

[2] The plaintiff also attached to her opposing brief a document titled "Certification of Indira Yerramsetty[,]" ("Yarramsetty Cert.") (ECF No. 62-1), attached to Opposition, which I have considered in resolving the instant motion.

this motion, including her disclosure for the first time of the identity of one of her experts, Ms. Soroko, and her provision of voluminous medical records and a report by Dr. Patel, are untimely and insufficient to render the original deficiencies substantially justified or harmless. *See* Reply at 1-5. In addition to addressing the sufficiency of her expert designations and whether any deficiencies are substantially justified and harmless, the plaintiff makes two other arguments that I address at the outset that do not turn the tide in her favor.

First, the plaintiff "begin[s] with the unremarkable proposition that [she] suffered soft tissue injuries" leading to the filing of this suit, asserts that she has been "fully transparent and cooperative in discovery[,]" identifying "33 individuals/entities . . . including all her known healthcare providers" in her initial disclosure pursuant to Rule 26(a)(1), and explains *why* she designated all five of her expert witnesses; for example, that "Dr. Mora was designated because he first diagnosed the plaintiff with PTSD[.]" Opposition at 1-5. None of these statements bears on the determination of the matter before me as none pertains to whether the plaintiff's expert witness designations are deficient and, if so, demonstrates that any deficiencies are either substantially justified or harmless.[3]

Second, the plaintiff states, "'When an act may or must be done within a specified time, the court may, for good cause, extend the time[] . . . on motion made after the time has expired if the party failed to act because of excusable neglect.'" *Id*. at 9 (quoting Fed. R. Civ. P. 6(b)(1)(B)). As the defendant notes, *see* Reply at 5, the plaintiff has not filed a motion for extension of her deadline to designate experts pursuant to Rule 6(b)(1)(B), and accordingly, her argument that the court "'may, for good cause, extend the time'" for her to provide the designations, Opposition at

---

[3] The plaintiff further refers to a purported settlement offer, stating, "If the defense is taking the position that it is being blindsided regarding plaintiff's physical injuries it is being disingenuous with the court." Opposition at 2. I do not construe the defendant to make such an argument and, in any event, this comment, as well, has no bearing on the merits of the motion before me.

9, is misplaced. In any event, the plaintiff fails to make a showing of excusable neglect for the same reasons I find, as discussed below, that she fails to demonstrate that the deficiencies in her expert designations were substantially justified.

### A. Rule 26(a)(2)(B) Designations

As the defendant correctly observes, *see* Motion at 2, the plaintiff's July 1, 2019, designations of an anticipated "real estate broker or appraiser" and "an economist" are insufficient. First, the experts are unnamed. *See* Fed. R. Civ. P. 26(a)(2)(A) (requiring that the litigant "identify" the witness). Second, the plaintiff failed to provide a "written report – prepared and signed by the witness[.]" Fed. R. Civ. P. 26(a)(2)(B).

The plaintiff points out that, since the deadline passed, she has (i) identified real estate broker Carol Soroko and economist Andrew L. Gluck, (ii) provided Ms. Soroko's report, "replete with her $500.00 invoice for services rendered, her litigation experience and her resume," and (iii) provided Mr. Gluck's *curriculum vitae* and list of litigation experience. Opposition at 4-5.

The plaintiff misses the mark. The time within which to make the disclosure and accompanying report, as this court has said many times before, "is determined by the scheduling order." *Fortin v. Town of Wells*, Civil No. 09-179-P-S, 2009 WL 3327200, at *2 (D. Me. Oct. 13, 2009). In turn,

> [t]hat is not a matter to be determined at the convenience of the expert witness, particularly when no reason is given why the expert cannot comply with the deadline set in the court's scheduling order. An expert's complete report is due at a specific time during the discovery period in order to allow opposing counsel to depose the expert, if desired, and to allow the opposing party's expert witness time to respond to the opinions expressed in the report, also within the discovery period, so that the plaintiff's counsel will also have an opportunity to explore those opinions before the end of discovery and the deadline for the filing of dispositive motions . . . . An expert can always supplement his or her opinions after submitting a report, should the need arise.

*Id*. at *3 (citation and internal quotation marks omitted).

9

The plaintiff rejoins that she has had to overcome many obstacles in litigating this case, including her mental illness, the fact that current counsel was not involved until 2017, the fact that she lost records due to foreclosure, and "the fact that [she] was forced to litigate this case in the state of Maine even though virtually all the witnesses are located in New Jersey." Opposition at 7. However, she does not explain, and it is not otherwise apparent, how those adversities prevented her from timely designating her expert witnesses in accordance with the dictates of Rule 26(a)(2). *See id.*

The plaintiff has been represented by Attorney Skoblar since the beginning of this case, *see* Complaint at Page ID # 6, affording nearly two years within which either to provide adequate designations of experts by July 1, 2019, or seek an extension of that deadline; the plaintiff and Attorney Skoblar are located in New Jersey, the same place as "virtually all the witnesses[,]" Opposition at 7, which should have helped, not hindered, their ability to work with those witnesses; and the plaintiff was involuntarily committed from November 16, 2015, to June 13, 2017, *see* Yerramsetty Cert. ¶ 20, nearly two years before the designation deadline, again providing sufficient opportunity to designate expert witnesses in compliance with Rule 26(a)(2) or seek an extension of the deadline to do so. The plaintiff, hence, fails to demonstrate substantial justification for the default. *Compare DePaolo v. GHM Portland Mar, LLC*, No. 2:16-cv-00468-NT, 2017 WL 3842151, at *6 (D. Me. Aug. 31, 2017) (substantial justification shown when plaintiff had "intended to use his treating VA physician as his expert but discovered that VA rules precluded her from doing so[,]" "became ill while his counsel was searching for a replacement expert[, and] . . . was too ill to be examined by his new" designated expert as of his expert designation deadline).

Nor does the plaintiff demonstrate that the deficiencies in the Soroko and Gluck designations are harmless. With respect to Ms. Soroko, she argues that the failure was harmless because the "defendant should have no difficulty retaining an expert to valu[]e those properties[,]" which "can be done inexpensively and quickly." Opposition at 5. Yet, the plaintiff fails to appreciate that the real estate broker to "valu[]e those properties" is *her* expert, whom *she* anticipated would testify to damages that she has endured as a result of the accident. Further, if the defendant "should have no difficulty retaining an expert to valu[]e those properties[,]" I see no reason why the plaintiff was justified in her failure to do the same by the July 1, 2019, deadline.

With respect to Mr. Gluck, the plaintiff "would like the opportunity to furnish a written report if she can reconstruct the necessary records." *Id.* at 5. Yet, to allow her an extension to do so, "*if* she can construct the necessary records[,]" *id.* (emphasis added), would be prejudicial both to the defendant and the court's orderly disposition of its cases, *see, e.g.*, *Fortin*, 2009 WL 3327200, at *4 (harm of plaintiff's proposal to extend scheduling order deadlines by two months to rectify deficient expert designations was "readily apparent" when "defendants w[ould] have to wait at least an additional two months for this matter to be resolved, while incurring litigation expenses, and the court's scheduling procedure will have been disrupted for no proffered reason other than the plaintiff's convenience").

The plaintiff, hence, fails to carry her burden of demonstrating that her untimely designations of both Ms. Soroko and Mr. Gluck were either substantially justified or harmless.

### B. Rule 26(a)(2)(C) Designations

As concerns the sufficiency of her designations of Drs. Mora, Patel, and DeJesus, the plaintiff notes that, pursuant to Rule 26(a)(2)(C), "[t]reating physicians are generally excused from preparing a [R]ule 26 written report because they are not retained to provide expert testimony but

11

are percipient witnesses of the treatment they rendered using their expertise." Opposition at 6. She adds that, in any event, she has shown substantial justification for any deficiency in view of the "many obstacles" discussed above in the context of the Soroko and Gluck designations and, as relevant to her designations of her treating physicians, "the fact that there was a different set of treating physicians prior to [her] involuntary commitment and a subsequent set of treating physicians after her discharge" and "the fact that [she] had to discontinue treatment with the first set of medical practitioners due to Travelers decision to not authorize payment to those physicians[.]" *Id*. at 7.

On the first point, the plaintiff notes that, (i) as part of initial disclosures served on May 14, 2019, she disclosed all then-known healthcare providers, (ii) the following day, she provided the defendant a blanket authorization to obtain her medical records, and, (iii) during that same approximate time period, she served the defendant a copy of a 2,000-page hospital chart containing entries by Dr. Mora. *See id*. at 1-2. She adds that she timely served the defendant her expert designations on July 1, 2019, indicating that (i) Dr. Mora would "testify that [she] suffered from [PTSD] related to the subject accident" and "was mentally incapacitated for at least 19 months" and would "opine as to causation, prognosis and disability and the expected cost of her future medical care[,]" (ii) Dr. Patel would "testify that [she] suffered spinal disc herniations, radiculopathy to the left leg, TMJ, [and] headaches[,]" would testify as to "the expected cost of her future medical care" and "causation, prognosis and disability[,]" and (iii) Dr. DeJesus would "testify as to [her] pain management related to the accident[,]" "the expected cost of her future medical care[,]" and "causation, prognosis and disability." *Id*. at 2-3.

Nonetheless, "[w]hile disclosures made under subsection (C) are considerably less extensive than a full expert report, to guard against the prejudice of unfair surprise on opposing

parties, and for Rule 26(a)(2)(C) to have any meaning, summary disclosures must contain more than a passing reference to the care a treating physician provided." *Kurylo v. Rizzo*, No. 2:15-cv-00015-JHR, 2017 WL 1047251, at *5 (D. Me. Mar. 17, 2017) (citation and internal punctuation omitted). As relevant here, the party designating a treating physician to offer expert testimony pursuant to Rule 26(a)(2)(C) must provide "a summary of the facts and opinions to which the witnesses [are] expected to testify as required by subsection (C)." *Id*. (citation and internal punctuation omitted).

The defendant persuasively argues that the plaintiff failed to do so here, noting that, "[f]rom the four corners of Plaintiff's disclosures, Defendant can only divine that [her] treating physicians have opinions on causation, prognosis, disability, and future medical expenses" but that "[*w*]*hat* those opinions are remains a mystery." Motion at 7 (emphasis in original).

The plaintiff rejoins that, subsequent to her expert designation deadline, she supplied Dr. Patel's narrative report dated September 13, 2019, arguing that, despite its tardiness, "Dr. Patel should be permitted to testify as to causation, permanency and the anticipated need for future treatment because his report is consistent with the narrative reports of [her] former physicians that rendered reports in 2011 which also spoke to causation and permanency." Opposition at 4. However, she neither cites authority in support of that proposition nor explains why she could not have clarified as of July 1, 2019, that Dr. Patel's opinions were expected to be consistent with those of physicians who rendered reports in 2011. The plaintiff's designations of her treating physicians, including Dr. Patel, simply were too vague to satisfy the requirements of Rule 26(a)(2)(C).

The plaintiff falls short of showing that the insufficiency was substantially justified. As in the case of the obstacles discussed above in the context of the plaintiff's designations of Ms.

13

Soroko and Mr. Gluck, the fact that the plaintiff had to switch medical practitioners following her discharge from her involuntary commitment does not substantially justify the deficiency of her disclosures when that event occurred nearly two years prior to her expert designation deadline.

Nor, finally, does the plaintiff demonstrate that her failure to supply timely designations of her treating physicians was harmless, merely arguing, in passing, that "given the complexity of this case and the many obstacles surrounding its prosecution, the defendant has suffered no prejudice because of this relatively slight delay[,] and . . . the plaintiff has at all times acted in good faith." *Id*. at 8.

### C. Remedy

The defendant argues that the plaintiff's "clear, harmful, and unjustified failure to timely designate retained expert witnesses in accordance with the Court's Scheduling Order and Rule 26(a)(2)(B)" warrants an order striking both the Soroko and Gluck designations, Motion at 6, and that her failure to make adequate disclosures with respect to her treating physicians warrants barring them from testifying as to any opinions on causation, prognosis, permanency, or future medical expenses "based on medical records that were not specifically identified, not produced with the designation, not provided with initial disclosures, not produced in response to discovery requests, and remain undiscovered[,]" *id*. at 10 (footnote omitted).[4]

Nonetheless, "[p]reclusion . . . is not a strictly mechanical exercise[,]" and the court retains discretion to "choose a less severe sanction." *Esposito*, 590 F.3d at 77-78 (citations and internal quotation marks omitted).

---

[4] The defendant acknowledges that, in conjunction with her opposing brief, the plaintiff supplied certain medical records, but contends that she "draws a false equivalency between disclosing medical records and disclosing expert opinions[,]" asserting that the Mora records contain no opinions regarding the plaintiff's prognosis after discharge or her future medical expenses, and the DeJesus records are silent on prognosis, permanency, and future medical bills. Reply at 3-4.

I conclude that application of the baseline rule of mandatory preclusion is warranted as to the entirety of the testimony of Ms. Soroko and Mr. Gluck, neither of whom was even identified as of the plaintiff's deadline to designate experts, and the testimony of the plaintiff's treating physicians concerning future medical costs. The plaintiff neither explained in her expert designations, nor is it self-evident, how her three treating physicians possess the requisite foundation to speak to the issue of future costs of treatment, a subject that typically would be the province of an economist.

Nonetheless, I decline at this time to bar the treating physicians from testifying as to causation, prognosis, and disability. Although the defendant takes issue with the plaintiff's failure to provide medical records at or before the time her expert designations were due, *see* Motion at 10, I stayed the parties' scheduling order deadlines to accommodate the filing of a dispositive motion that the defendant ultimately chose not to file, and, on lifting that stay, directed that the parties serve both their initial disclosures and initial written discovery by May 15, 2019, *see* Order (ECF No. 40); Order (ECF No. 46), allowing for less than the standard seven-week interval between the parties' initial disclosure deadline and the plaintiff's expert designation deadline, Scheduling Order. The defendant first raised the issue of its lack of receipt of the plaintiff's complete medical records on July 31, 2019, a month after the plaintiff's deadline to designate her experts, *see* Hearing Request, and ultimately did not press the point, *see* Order (ECF No. 57). This "history of the litigation[,]" *Esposito*, 590 F.3d at 78, cuts against mandatory preclusion.

Further, the testimony at issue is critical to the plaintiff's personal injury case, also weighing against its mandatory preclusion. *See, e.g., id.* (factors relevant to whether to impose mandatory preclusion include "the sanctioned party's need for the precluded evidence"). The

plaintiff represents, and the defendant does not dispute, that the grant in full of the Motion "would amount to the effective dismissal of her case." Opposition at 1; *see generally* Reply.

Finally, while the plaintiff failed to carry her burden to demonstrate the harmlessness of the deficiencies in her expert designations, the parties' remaining scheduling order deadlines have been stayed pending the resolution of this motion, *see* Order (ECF No. 57), preserving the *status quo*. I have borne in mind the need to mitigate harm to the defendant in resetting the parties' scheduling order deadlines in the manner set forth below.

### IV. Conclusion

For the foregoing reasons, I **GRANT** the Motion in part, to the extent that I preclude the expert testimony of Ms. Soroko and Mr. Gluck in its entirety and any testimony of Drs. Mora, Patel, and DeJesus regarding costs of the plaintiff's future medical care, and otherwise **DENY** it without prejudice as to any testimony of Drs. Mora, Patel, and DeJesus regarding causation, prognosis, or disability. The plaintiff is **DIRECTED** to supplement her expert designations of Drs. Mora, Petal, and DeJesus on the subject matters of causation, prognosis, or disability within 14 days, or by February 18, 2020, with the warning that a failure to timely and sufficiently supplement any of those designations may result in the preclusion of the relevant testimony. Finally, the parties' remaining scheduling order deadlines, which were stayed pending the resolution of this motion, *see* Order (ECF No. 57), are **RESET** as follows: the defendant's expert designation shall be served by March 23, 2020; discovery shall be completed by April 24, 2020; the plaintiff's written demand and the defendant's written response shall be served by April 10 and 24, 2020, respectively; any Local Rule 56(h) notice shall be filed by May 1, 2020; any dispositive/*Daubert*/*Kumho* motion shall be filed by May 15, 2020; and the case shall be placed on the July 2020 trial list, to be trial-ready by July 6, 2020.

## *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 3rd day of February, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge